AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
SEP 03 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of                       )
*(Briefly describe the property to be searched*       )
*or identify the person by name and address)*         )   Case No.
                                                     )
Apple Cellular Telephone                             )
Model: iPhone 8                                      )   '19 MJ 3759
S/N: 352981092059331                                 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Attachment A, incorporated herein by reference

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See attached Affidavit of Agent Leonardo Contreras, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Leonardo Contreras, BPA-Intelligence
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/29/2019

*Judge's signature*

City and state: San Diego, CA          Andrew G. Schopler, Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH OF:<br><br>Apple Cellular Telephone<br>Model: iPhone 8<br>S/N: 352981092059331<br><br>Samsung<br>Model: Galaxy S10<br>S/N: 352695104156253<br><br>Samsung<br>Model: SMG532M<br>S/N: 35260509514622 | **AFFIDAVIT OF LEONARDO CONTRERAS IN SUPPORT OF SEARCH WARRANT** |

## AFFIDAVIT

I, Leonardo Contreras, Border Patrol Agent-Intelligence with the United States Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"), having been duly sworn, depose and state as follows:

1. I make this affidavit in support of an application for a search warrant in furtherance of an alien smuggling investigation conducted by U.S. Border Patrol Agents for the following target property: three cellular telephones seized on August 14, 2019, from Luis ALFARO-Cortes, Marco Antonio CORTES-Coello, and Abelar RAMIREZ-Coello. The cellular telephones are (1) Apple iPhone, S/N: 352981092059331, (2) Samsung Model: Galaxy S10, S/N: 352695104156253, and (3) Samsung Model: SMG532M, S/N: 35260509514622 ("**Target Telephones**").

2. The **Target Telephones** were seized from ALFARO, CORTES, and RAMIREZ after they were apprehended in a red Honda Civic while attempting to transport one illegal alien after coordinating with the smuggling coordinator. It is

believed that the **Target Telephones** were used by ALFARO, CORTES, and RAMIREZ to communicate with co-conspirators during an alien smuggling event on August 14, 2019. ALFARO, CORTES, and RAMIREZ are being investigated for Transportation of Illegal Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), in the Southern District of California. Probable cause exists to believe that the **Target Telephones** contain evidence relating to violations of Title 8, United States Code section 1324. The specified telephones are currently in the possession of the Customs and Border Protection Chula Vista Border Patrol Station, 311 Athey Street, San Diego, California 92173.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the items to be searched as described in Attachment A (incorporated herein). This item may be or lead to: (1) evidence of the existence of alien smuggling or conspiracy to smuggle aliens in violation of 8 U.S.C. § 1324; (2) contraband, fruits of crime, or things otherwise criminally possessed; and (3) property designed or intended for use in, or which is or has been used as a means of committing, criminal offenses.

## EXPERIENCE AND TRAINING

4. I am a USBP Agent-Intelligence within the United States Department of Homeland Security, Customs and Border Protection, USBP. I have been employed as a USBP Agent since September 2007. I am presently assigned to the San Diego Sector Intelligence Unit at the Campo Border Patrol Station. I am a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I have received basic training in investigating alien smuggling, identifying immigration violations, and enforcing numerous immigration and customs laws within the United States.

5. I am currently assigned to conduct investigations of criminal violations relating to alien smuggling. I have participated in numerous alien smuggling-related

investigations, many of which involved the arrest of persons for alien smuggling offenses. In those cases, I conducted interviews with the arrested persons and with their associates. Through these interviews, I have gained a working knowledge of and insight into the activities and operations of alien smugglers.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones and portable radios to maintain communications with co-conspirators to further their criminal activities. I am also aware that it is a common practice for alien smugglers to communicate with the smuggled aliens regarding smuggling arrangements and payment utilizing cellular telephones and portable radios. Conspiracies involving alien smuggling generate many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a USBP Agent-Intelligence, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls and text, web, and voice messages.

    b. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the illegal aliens while they are in transit.

c.  Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

d.  Alien smugglers will use cellular telephones to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens.

e.  Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity, including the presence and location of marked and unmarked units, as well as the operational status of USBP checkpoints.

f.  Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

g.  Alien smugglers will use GPS devises in remote areas to guide them to the location of the aliens to be smuggled, as well as to the final destination of the smuggled aliens.

## FACTS SUPPORTING PROBABLE CAUSE

9. On August 14, 2019, Campo Station Intelligence Team agents were monitoring a tracking device on a black BMW registered to Luis MACIAS. Agents noticed the BMW was heading north on Interstate 15 ("I-15"). This was the first time in a week of monitoring that the BMW agents had seen it head north leaving San Diego County. Agents believed that the BMW was heading to complete a "Buy Out," where the sponsors of illegal aliens pay smugglers for their friends and family.

10. BPA-I Benjamin Moretti began traveling north on the I-15. BPA-I Moretti observed that the vehicle came to a stop at the Scottish Inns and Suites located at 210 Lincoln Ave. Corona, California, 92882 via the tracker. At approximately 7:40 p.m., BPA-I Moretti arrived at the gas station and observed the BMW at the gas station. It was at this time that agents began physical surveillance of the BMW.

11. At approximately 8:15 p.m., BPA-I Adnane Benchekroun arrived at the hotel parking lot to set up surveillance. At approximately 8:25 p.m., the BMW pulled

4

into the parking lot of the hotel and parked immediately next to BPA-I Benchekroun's unmarked agency issued vehicle. After being parked there for a few minutes, the vehicle pulled away from where it was initially parked and repositioned to the north side of the building. Less than a minute after the vehicle parked on the north side of the building, BPA-I Benchekroun observed a subject wearing a blue shirt and dark jeans walk up the staircase and into room 214. While the subject was at the door, BPA-I Benchekroun was able to describe the back of his shirt depicting a white and black square logo type of design. The subject in the blue shirt was in the room for less than a minute before he walked back out of the room, through the building and down the stairs, and away southbound on Lincoln Avenue towards the gas station. At approximately 8:31 p.m., BPA-I Leonardo Contreras, who was conducting surveillance from the Shell gas station south of the hotel, acquired visual of the subject in the blue shirt that BPA-I Benchekroun described. BPA-I Contreras was able to positively identify him as Jaime TAICH-Cruz and confirmed that he is associated with the black BMW target vehicle.

12. At approximately 9:37 p.m., BPA-I Benchekroun observed a female, later identified as Nadia ROMERO Corona, exit room 214 and stand on the walkway in front of the room. While standing on the walkway, ROMERO appeared to be looking around as if she was looking at all the cars in the parking lot.

13. Approximately a minute after ROMERO walked back into the room, a male subject, later identified as Thomas Zachary BRUNDIGE, exited room 214, walked downstairs to the parking lot, and walked to a black Scion xB bearing California license plate number 6CKK011. After less than a minute by the Scion xB, BRUNDIGE walked back into room 214. At approximately 9:42 p.m., ROMERO and BRUNDIGE walked back out of room 214, accompanied by a third Hispanic male adult with a beard, wearing a black short sleeve shirt and dark pants. All three walked down to the parking lot towards the Scion. Once at the Scion, BRUNDIGE got into the vehicle while ROMERO and the Hispanic male adult, later identified as Luis ALFARO-Cortes (smuggled alien), stood outside of the car. ROMERO and ALFARO stood outside of the Scion xB for

5

several minutes while BRUNDIGE waited in the car. At approximately 10:07 p.m., ROMERO and ALFARO got into the vehicle with BRUNDIGE and they drove out of the parking lot. After the Scion xB left the hotel parking lot at approximately 10:09 p.m., agents were able to maintain visual of the vehicle as it drove around with no intended destination.

14. At, approximately 10:30 p.m., BPA-I Moretti was stationary in the middle of the Cardenas Grocery parking lot located on the southeast corner of the intersection of 2nd Street and Lincoln Ave at 301 S Lincoln Ave. At this time, BPA-I Moretti observed a red Honda Civic bearing California license plate number 5PLH170 park one space to his right. The vehicle had three occupants. One individual exited from the back seat of the vehicle and began walking in the direction of the hotel at the northeast corner of 2nd Street and Lincoln Ave. This individual was later identified as Marco Antonio CORTES-Coello (sponsor).

15. At approximately 10:46 p.m., BPA-I Moretti observed CORTES return to the red Honda. CORTES was standing outside the vehicle speaking with the front seat passenger. At this same time, the BMW returned to the Cardenas parking lot and parked behind the red Honda. At 10:49 p.m., agents observed the Scion xB return to the hotel. At the same time, BPA-I Moretti saw CORTES begin walking back to the hotel. At approximately 10:51 p.m., Agent Benchekroun relayed that he observed ALFARO and CORTES meet at the Scion, hug, and begin walking back south in the direction of the red Honda. In BPA-I Moretti's training and experience, this is consistent with a smuggled alien being reunited with a sponsor who will be paying the smuggling fees.

16. At approximately 10:52 p.m., BPA-I Moretti observed TAICH exit the passenger seat of the red Honda and enter the passenger seat of the BMW. TAICH was the passenger that CORTES was speaking with. At this time, the red Honda traveled to the western end of the parking lot and parked while the BMW exited the lot. BPA-I Moretti relayed to agents that the red Honda might be positioning itself to pick up

ALFARO and CORTES. At approximately 10:55 p.m., BPA-I Moretti observed CORTES and ALFARO approach the red Honda and get in.

17. At approximately 10:55 p.m., BPA-I Nate Romero and BPA-I Ehab Rahman approached the Honda. They questioned CORTES and ALFARO as to their citizenship. Both stated that they were citizens of Mexico and did not have documentation allowing them to be in the United States legally. At approximately 11:00 p.m., BPA-I Rahman placed CORTES and ALFARO under arrest for being in the country illegally.

18. During post arrest interviews of ALFARO, CORTES, and RAMIREZ, they identified TAICH and MACIAS as the individuals organizing the smuggling event. ALFARO, CORTES, and RAMIREZ all stated that they communicated via the **Target Telephones** with TAICH and MACIAS. CORTES and RAMIREZ also stated that they were guided via the **Target Telephones** to the location to pick up ALFARO in Corona, California. Based upon my experience and investigation in this case, I believe that MACIAS and TAICH may have guided CORTES and RAMIREZ to the pickup location of ALFARO.

19. Based upon my experience and investigation in this case, I believe that ALFARO, CORTES, and RAMIREZ, as well as other persons not yet known, were involved in an on-going conspiracy to smuggle aliens. Based on my experience investigating alien smugglers, I also believe that ALFARO, CORTES, and RAMIREZ may have used the **Target Telephones** to coordinate with co-conspirators regarding the smuggling of illegal aliens, and to otherwise further this conspiracy both inside and outside the United States. I also believe that ALFARO, CORTES, and RAMIREZ may have used the **Target Telephones** to aid them in the recovery of the illegal aliens near the United States Mexico border.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the alien

7

smuggling activities of ALFARO, CORTES, and RAMIREZ and their co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the cellular telephone described herein.

## SEARCH PROTOCOL

21. It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within

the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

24. Following the issuance of this warrant, I will collect the subject cellular telephone and, with assistance if necessary from cellular telephone forensic examiners, will attempt to securely power the devices, identify whether they are protected by a personal identification number (PIN), determine or circumvent the PIN and image or retrieve data subject to seizure pursuant to this warrant from the device. The search of the devices or of an image on the data on the device will be limited to identifying and seizing data subject to seizure pursuant to this warrant and, in any event, will be limited to only the information to be found on basic cellular telephones: digital, cellular, and/or telephone numbers and/or direct connect numbers assigned to the device; call and direct connect history information; list of contacts stored on the device; text messages stored on the device; and, if equipped as a camera, photographs and videos stored on the device. In the event that I or other personnel lawfully conducting the analysis identify information pertaining to crimes outside the scope of the warrant, such information will not be used in any way unless a new warrant is obtained to search for such information.

25. I, or any other duly authorized federal agent, will personally serve the warrant requested above, and will be assisted by other duly authorized federal investigators.

## CONCLUSION

26. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that ALFARO, CORTES, and RAMIREZ used the **Target Telephones** to facilitate alien smuggling. The **Target Telephones** were likely

used to facilitate the offenses by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 8, United States Code, Section 1324.

27. I also believe that probable cause exists to indicate that evidence, fruits, and instrumentalities of illegal activity committed by ALFARO, CORTES, and RAMIREZ continues to exist on the **Target Telephones**.

28. Based upon my experience and training, consultation with other agents in alien smuggling investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a USBP Agent, or another federal law enforcement agent specially trained in digital evidence recovery, to search the item described in Attachment A, and seize the items listed in Attachment B.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

29. I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Leonardo Contreras
Border Patrol Agent Intelligence
U.S. Border Patrol

SUBSCRIBED AND SWORN TO ME BEFORE THIS 29th DAY OF AUGUST, 2019.

_____
HONORABLE ANDREW G. SCHOPLER
United States Magistrate Judge

11

ATTACHMENT A

The following item is to be searched:

    Apple Cellular Telephone
    Model: iPhone 8
    S/N: 352981092059331

These items are currently in the possession of the Customs and Border Protection Chula Vista Border Patrol Station, 311 Athey Street, San Diego, CA 92173.

ATTACHMENT B

*Attachment B for Application for Search Warrant*

## ITEM TO BE SEIZED

Authorization to search the **Target Telephones** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the **Target Telephones** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephones** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 15, 2019 to August 15, 2019:

a. tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

b. tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers-that may contain electronic evidence tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

d. tending to identify travel to or presence at locations involved in the smuggling of aliens into the United States from Mexico or transporting illegal aliens within the United States such as drop off and pick up locations, stash houses, load houses, or delivery points;

e. tending to indicate payment for the smuggling of aliens into the United States or the transportation of aliens with in the United States;

f. tending to identify the user of, or persons with control over or access to, the **Target Telephones**; or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, record, or data above.

**which are evidence of violations of 8 U.S.C. § 1324 (Alien Smuggling).**